**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

|  |
|---|
| C.S. LAWN & LANDSCAPE, INC., |
| Plaintiff, |
| v. |
| U.S. DEPARTMENT OF LABOR, *et al.*, |
| Defendants. |

Case No. 1:23-cv-01533-TSC

**DEFENDANTS' REPLY IN SUPPORT OF DEFENDANTS' CROSS MOTION FOR
SUMMARY JUDGMENT**

# TABLE OF CONTENTS

INTRODUCTION..................................................................................................................1

ARGUMENT......................................................................................................................2

I.    Enforcement of the nation's immigration laws implicates only public rights that do not require a jury in federal court.................................................................................2

    A.    CS Lawn impliedly consented to the Department of Labor's adjudication....................6

II.   This Court should reject Plaintiff's removal claims. ..................................................7

    A.    CS Lawn forfeited its removal claims by failing to raise them with the agency..............7

    B.    CS Lawn has no viable removal claim because it cannot show any harm from the purported removal restrictions..............................................................................10

III.  The Department of Labor's imposition of back pay is in accordance with law and fully supported by the record. .........................................................................................11

    A.    The Department of Labor properly enforced its 2008 H-2B regulations......................11

    B.    The Department of Labor is fully authorized to assess back wages...............................12

    C.    The Department of Labor's imposition of back pay is fully supported by the record and is neither arbitrary nor capricious....................................................................13

IV.   The Department of Labor did not violate the Excessive Fines Clause. ....................13

CONCLUSION.................................................................................................................14

# TABLE OF AUTHORITIES

**Cases** **Page(s)**

*Adm'r, Wage and Hour Div. v. Deggeller Attractions, Inc.*,
  ARB No. 2020-0004 (ARB Jan. 25, 2022) .................................................................11

*Adm'r, Wage & Hour Div. v. Strates Shows, Inc.*,
  ARB No. 15-069 (ARB Aug. 16, 2017) .......................................................................12

*Apple Inc. v. Voip-Pal.com, Inc.*,
  976 F.3d 1316 (Fed. Cir. 2020) .................................................................................13

*Arizona v. United States*,
  567 U.S. 387 (2012) ....................................................................................................3

*Atlas Roofing Co. v. Occupational Safety and Health Rev. Comm'n*,
  430 U.S. 442 (1977) ....................................................................................................6

*Bd. of Trs. of Univ. of Ill. v. United States*,
  289 U.S. 48 (1933) ......................................................................................................3

*Bhatti v. Fed. Hous. Fin. Agency*,
  97 F.4th 556 (8th Cir. 2024) .....................................................................................10

*Browning-Ferris Indus. of Vt., Inc. v. Kelco Disposal, Inc.*,
  492 U.S. 257 (1989) ..................................................................................................14

*Calcutt v. FDIC*,
  37 F.4th 293 (6th Cir. 2022) .....................................................................................10

*Carr v. Saul*,
  593 U.S. 83 (2021) ...................................................................................................8, 9

*CFPB v. Law Offs. of Crystal Moroney, P.C.*,
  63 F.4th 174 (2d Cir. 2023) ......................................................................................10

*Collins v. Yellen*,
  594 U.S. 220 (2021) ..................................................................................................10

*Commodity Futures Trading Comm'n v. Schor*,
  478 U.S. 833 (1986) ....................................................................................................7

*Crowell v. Benson*,
  285 U.S. 22 (1932) ...................................................................................................5, 6

*Dareth T. v. Kijakazi*,
  No. 2:20-cv-06913-AFM, 2022 WL 671540 (C.D. Cal. Mar. 7, 2022) ........................10

*Decker Coal Co. v. Pehringer,*
  8 F.4th 1123 (9th Cir. 2021) ...............................................................................11

*Elgebaly v. Garland,*
  109 F.4th 426 (6th Cir. 2024) ..............................................................................4

*FCC v. Prometheus Radio Project,*
  592 U.S. 414 (2021) ....................................................................................... 11, 13

*Fleming v. U.S. Dep't of Agric.,*
  987 F.3d 1093 (D.C. Cir. 2021)............................................................................8

*Frank's Nursery, LLC v. Walsh,*
  No. H-21-3485, 2022 WL 2757373 (S.D. Tex. July 14, 2022) ..........................7

*Gibbons v. Ogden,*
  22 U.S. (9 Wheat.) 1 (1824) ...............................................................................3

*K & R Contractors, LLC v. Keene,*
  86 F.4th 135 (4th Cir. 2023) ..............................................................................10

*La. Forestry Ass'n v. Sec'y U.S. Dep't of Lab.,*
  745 F.3d 653 (3d Cir. 2014)..............................................................................3, 4

*Lloyd Sabaudo Societa Anonima Per Azioni v. Elting,*
  287 U.S. 329 (1932) ............................................................................................5

*Michele T. v. Comm'r of Soc. Sec.,*
  572 F.Supp.3d 1039 (W.D. Wash. 2021) ..........................................................10

*NLRB v. Starbucks Corp.,*
  125 F.4th 78 (3d Cir. 2024) ......................................................................8, 9, 10

*Noriega-Perez v. United States,*
  179 F.3d 1166 (9th Cir. 1999) ............................................................................5

*Oceanic Steam Nav. Co. v. Stranahan,*
  214 U.S. 320 (1909) .....................................................................................4, 5, 6

*Oil States Energy Servs., LLC v. Greene's Energy Grp., LLC,*
  584 U.S. 325 (2018) ............................................................................................3

*Pharaon v. Bd. of Governors of Fed. Rsrv. Sys.,*
  135 F.3d 148 (D.C. Cir. 1998).............................................................................13

*Puckett v. United States,*
  556 U.S. 129 (2009) ............................................................................................7

*SEC v. Jarkesy,*
    603 U.S. 109 (2024) ................................................................................................*passim*

*Stern v. Marshall,*
    564 U.S. 462 (2011) ...........................................................................................................7

*Sun Valley Orchards, LLC v. U.S. Dep't of Lab.,*
    No. 1:21-CV-16625, 2023 WL 4784204 (D.N.J. July 27, 2023).................................9, 14

*United States v. Bajakajian,*
    524 U.S. 321 ....................................................................................................................14

*Wellness Int'l Network, Ltd. v. Sharif,*
    575 U.S. 665 (2015) .......................................................................................................6, 7

*Wnuck v. Comm'r,*
    136 T.C. 498 (2011) ........................................................................................................13

*Wood v. Milyard,*
    566 U.S. 463 (2012) ........................................................................................................11

**Statutes**

8 U.S.C. § 1184 ......................................................................................................................12

8 U.S.C. § 1324a .......................................................................................................................3

8 U.S.C. § 1101 .........................................................................................................................4

**Regulations**

20 C.F.R. § 655.65 ...................................................................................................................5

29 C.F.R. § 18.10 .....................................................................................................................9

29 C.F.R. § 18.12 .....................................................................................................................9

29 C.F.R. § 18.20 ..................................................................................................................8, 9

29 C.F.R. § 18.50 .....................................................................................................................9

29 C.F.R. § 18.70 .....................................................................................................................9

29 C.F.R. § 18.80 ..................................................................................................................8, 9

29 C.F.R. § 503.43 ................................................................................................................8, 9

29 C.F.R. § 503.51 ...................................................................................................................9

29 C.F.R. § 531.31 .................................................................................................................13

## INTRODUCTION

Based on clear evidence, the Department of Labor initiated a straightforward administrative enforcement action against CS Lawn for violations of the H-2B program. Pursuant to the administrative procedures set forth in the Department's H-2B regulations, CS Lawn obtained review before the Office of Administrative Law Judges ("OALJ") and Administrative Review Board ("ARB"), which affirmed the Department's determination that CS Lawn violated the H-2B program requirements, resulting in an award of back wages and civil money penalties ("CMPs"). However, lacking a cogent defense to the Department's violation findings, CS Lawn now appeals to this Court to vacate the results of the administrative adjudication. But unlike the Department's straightforward enforcement action, CS Lawn's legal theories are deeply flawed. CS Lawn primarily relies on inapposite Seventh Amendment case law for its constitutional claim that it is entitled to a jury trial in an Article III tribunal, ignoring the Supreme Court's exhortations in *Jarkesy* reaffirming an unbroken line of precedent holding that violations of immigration laws implicate public rights and are properly adjudicated outside of Article III tribunals. Pl.'s Reply in Supp. of Summ. J. ("Pl.'s Reply") at 2-16, ECF No. 21. CS Lawn asserts that it did not impliedly consent to agency adjudication but does not dispute that it never raised any Seventh Amendment or Article III concerns during the four years it litigated before the agency. *Id.* at 19-20. Likewise, CS Lawn does not dispute that it failed to raise its removal claims before the agency, and so it cannot be heard to raise them for the first time in this forum. *Id.* at 24-26. At any rate, although the Government now concedes that the removal provisions are unconstitutional, CS Lawn's removal claim nonetheless must be rejected because it fails to identify any harm from those provisions. *Id.* at 21-24. As for CS Lawn's excessive fines claim, its argument ignores binding precedent, instead attempting to downplay its violation of federal immigration laws as mere "zoning violation[s]," which fails to pass legal muster. *Id.* at 26-28. CS Lawn's contention that the Department is unable to enforce the 2008 Rule for labor certifications issued prior the date that the rule was enjoined also fails because, as courts have held, that injunction applied only prospectively, not retroactively. *Id.* at 29-31. Finally, CS Lawn's argument that the Secretary of Labor has no authority to assess back wages also fails as a matter of law, because the Secretary has authority impose such

administrative remedies as determined to be appropriate for violations of the H-2B program—authority that the Secretary has exercised since 2009, was consistent with the then-enforceable 2008 Rule, and is neither arbitrary nor capricious. *Id.* at 31-32.

In sum, nearly all of CS Lawn's constitutional claims—based on Article II, Article III, and the Seventh and Eighth Amendments—are resolved by on-point, binding case law that CS Lawn either ignores or misreads. CS Lawn's statutory arguments—seeking to eviscerate the authority delegated to the Secretary pursuant to the Immigration and Nationality Act to enforce violations of the H-2B program—are similarly inconsistent with the plain statutory text and associated case law. And CS Lawn's arguments on the merits of its APA claim fare no better: the agency reasonably adjudicated CS Lawn's H-2B violations and reasonably explained its decision to assess back wages and penalties based on violations of federal immigration law. The Court should reject CS Lawn's misguided arguments and dismiss all these claims or grant summary judgment for Defendants.

## ARGUMENT

## I.    Enforcement of the nation's immigration laws implicates only public rights that do not require a jury in federal court.

Plaintiff misapplies the Supreme Court's reasoning in *Jarkesy* in an attempt to unduly narrow and undermine decades of unbroken caselaw holding that violations of immigration laws squarely implicate public rights. As the Supreme Court explained in *Jarkesy*, to determine whether a case may be adjudicated without a jury through agency proceedings, there is a two-step inquiry: (1) is the action "legal in nature" (as opposed to equitable) such that it implicates the Seventh Amendment right to a civil jury, and, if so, (2) does it nonetheless concern "public rights" that can be adjudicated by an agency? *SEC v. Jarkesy*, 603 U.S. 109, 119, 126 (2024).

Plaintiff flips the *Jarkesy* inquiry on its head and gets it backwards. Plaintiff treats the first step as dispositive, while ignoring the binding precedent establishing that this case falls squarely within the second step. Pl.'s Reply at 2-4. If an action concerns public rights, whether the remedy sought resembles a legal or equitable remedy is irrelevant—public rights cases do not need to be tried by a jury in federal court. While the "Court has not definitively explained the distinction between public

and private rights" and its precedents "have not been entirely consistent," it has maintained the consistent principle that public rights comprise "matters which arise between the Government and persons subject to its authority in connection with the performance of the constitutional functions of the executive or legislative departments." *Oil States Energy Servs., LLC v. Greene's Energy Grp., LLC*, 584 U.S. 325, 334 (2018) (citation omitted). Whatever else public-rights cases might include, they unquestionably include Congress's "plenary power over immigration." *Jarkesy*, 603 U.S. at 129-30 (recognizing that immigration and other "historic categories of adjudications fall within the" public-rights doctrine). In such cases, "Congress can reserve to itself the power to decide, delegate that power to executive officers, or commit it to judicial tribunals." *Oil States*, 584 U.S. at 342 (citation omitted).

Plaintiff asserts that "the Government conflates the power to legislate with the power to adjudicate." Pl.'s Reply at 4. But the Government does no such thing, nor does it need to advance such a sweeping argument to prevail on Plaintiff's claims here. Congress's power over immigration matters is unique: it is "exclusive and plenary" and "comprehend[s] every species of commercial intercourse between the United States and foreign nations." *Bd. of Trs. of Univ. of Ill. v. United States*, 289 U.S. 48, 56 (1933) (quoting *Gibbons v. Ogden*, 22 U.S. (9 Wheat.) 1, 193 (1824) (Marshall, C.J.)). And, as explained in the Government's opening brief, there are good reasons for this plenary power. Immigration policy affects "trade, investment, tourism, and diplomatic relations for the entire Nation, as well as the perceptions and expectations of aliens in this country who seek the full protection of its laws." *Arizona v. United States*, 567 U.S. 387, 394-95 (2012).

Although the federal government need not allow employers to hire foreign workers at all, Congress has chosen to enable employers like CS Lawn to do so under limited circumstances when certain conditions are met. Specifically, Congress codified the temporary-foreign-worker program as part of the Immigration and Nationality Act of 1952 and refined it further in the Immigration Reform and Control Act of 1986. *See La. Forestry Ass'n v. Sec'y U.S. Dep't of Lab.*, 745 F.3d 653, 659 (3d Cir. 2014). Congress simultaneously prohibited employers from knowingly hiring "an unauthorized alien to seek or engage in work in the United States." *Arizona*, 567 U.S. at 394. (citing 8 U.S.C. § 1324a), while allowing "U.S. employers to recruit and hire temporary unskilled, non-agricultural workers from

abroad to fill positions that no qualified U.S. worker will accept" so long as the employer complies with federal statutes and regulations. *La. Forestry*, 745 F.3d at 659 (citing 8 U.S.C. § 1101(a)(15)(H)(II)(b)). Here CS Lawn failed to comply with federal immigration laws, and thus the agency enforcement action—an action taken to enforce compliance with federal immigration laws— falls squarely within the public rights doctrine.

It is irrelevant that the enforcement action for violation of those federal immigration laws sought to impose fines and penalties. In cases involving public rights, the remedy is *not* "all but dispositive" – the nature of the right at issue is. *Contra* Pl.'s Reply at 4. In *Jarkesy*, the Supreme Court distinguished the securities laws at issue there from cases involving Congress's "plenary power over immigration" through which Congress can "prohibit immigration by certain classes of persons and enforce those prohibitions with administrative penalties assessed without a jury." 603 U.S. at 128-29. In fact, in *Jarkesy* the Justices unanimously reaffirmed that when Congress exercises its control over immigration—which has been described as the subject that Congress has the most "complete" "legislative power" over, "administrative officers should have the authority to enforce designated penalties without resort to the courts." *Id.* at 129 n.1 (quoting *Oceanic Steam Nav. Co. v. Stranahan*, 214 U.S. 320, 339 (1909). Given "Congress's long-recognized and extensive authority over the field of immigration," it has been "traditionally included" within the core of public rights, *Jarkesy*, 603 U.S. at 152, 160 (Gorsuch, J., concurring), and a "civil-penalty statutory scheme" for immigration violations is "beyond all question constitutional," *id.* at 176 (Sotomayor, J., dissenting). Courts applying *Jarkesy* have likewise held that "*Jarkesy* clearly does not implicate immigration adjudication." *Elgebaly v. Garland*, 109 F.4th 426, 434, 437–38 (6th Cir. 2024).

Unsurprisingly, the Supreme Court has long recognized that Congress may authorize the Executive Branch to administer immigration laws like the H-2B program and may impose money penalties for violations of those laws. Plaintiff's assertion that "[c]ases seeking civil penalties almost always implicate private rights" not only ignores this line of precedent upholding civil penalties for violations of immigration laws, but also ignores the language of *Jarkesy* itself. *See generally* Pl.'s Reply at 4-8. And there is longstanding precedent supporting the imposition of civil penalties for violations of

federal immigration laws. *See, e.g., Lloyd Sabaudo Societa Anonima Per Azioni v. Elting*, 287 U.S. 329, 334 (1932) (imposing fines for violation of immigration laws); *Oceanic Steam*, 214 U.S. at 339 (same); *Noriega-Perez v. United States*, 179 F.3d 1166, 1177 (9th Cir. 1999) (same).

Plaintiff attempts to escape this long line of precedent by trying to myopically narrow the holdings of the cases upon which the government—and the Supreme Court in *Jarkesy*—rely for the proposition that immigration violations implicate matters of public rights. But those cases provide no support for Plaintiff's narrow reading limiting the scope of immigration enforcement cases implicating public rights to only those cases involving bringing persons across the border unlawfully. Pl.'s Reply at 13. On its face, the language in the cited cases bore no such limit: "Under the Constitution and laws of the United States, control of the admission of aliens is committed exclusively to Congress, and, in the exercise of that control, *it may lawfully impose appropriate obligations*, sanction their enforcement by reasonable money penalties, and invest in administrative officials the power to impose and enforce them." *Lloyd Sabaudo*, 287 U.S. at 334. Consistent with that understanding, Congress has enacted many statutes that involve executive adjudication of immigration laws—including, where necessary, imposing civil penalties—based on activities occurring within the Nation's borders. *See* Defs.' Mem. in Supp. of Summ. J. ("Defs.' Mem.") at 13, ECF No. 21 (collecting statutes). Plaintiff repeatedly tries to characterize this case as one about "employment-related penalties" but fails to acknowledge the fact that the enforcement action here was for violation of federal immigration laws. And they are therefore public rights that Congress can constitutionally assign "to executive officers," *Crowell v. Benson*, 285 U.S. 22, 50 (1932), regardless of whether immigration violations occur at the border or within it, by noncitizens or by domestic employers of foreign workers. CS Lawn voluntarily choose to participate in the H-2B program because it confers benefits not afforded to other employers, but in exchange it agreed to abide by the terms and obligations of the H-2B program. 20 C.F.R. § 655.65(f) (2008). Because "Congress's power over foreign commerce, [is] so total[,]"Congress "may enforce those prohibitions with administrative penalties assessed without a jury." *Jarkesy*, 603 U.S. at 129 (citing *Oceanic Steam*, 214 U.S. at 339–340).

In sum, Plaintiff gets the analysis backwards. This case is not a "private rights" case because it involves a civil monetary penalty (in addition to the equitable remedy of back wages), Pl.'s Reply at 10; rather, it is a "public rights" case because it involves the enforcement of federal immigration law. The power "over immigration" is "inherently in the exclusive domain of the Federal Government and critical to its very existence" and violations of immigration laws can constitutionally be adjudicated in administrative proceedings and without a jury. *Atlas Roofing Co. v. Occupational Safety and Health Rev. Comm'n*, 430 U.S. 442, 456 (1977) (explaining that adjudications involving immigration are "public rights [that] may be assigned to administrative agencies"); *Crowell*, 285 U.S. at 51 (identifying "interstate and foreign commerce" and "immigration" as "[f]amiliar illustrations" of public-rights matters); *Oceanic Steam*, 214 U.S. at 334–35 ("Congress has the power to exclude aliens from the United States," to "prescribe the terms and conditions on which they may come in," and to "commit the enforcement of such conditions and regulations to executive officers" without a jury.); *accord Jarkesy*, 603 U.S. at 128.

### A.    CS Lawn impliedly consented to the Department of Labor's adjudication.

Even if the Court were to break new ground and hold that the Department of Labor's adjudication against CS Lawn ran afoul of Article III or the Seventh Amendment, Plaintiff's claim should still be dismissed because CS Lawn consented to executive adjudication. Plaintiff does not dispute—and cannot overcome—the fact that it never raised these Article III and Seventh Amendment objections before the agency. Plaintiff agrees that a litigant's consent to a forum may be either "express or implied" but that is where its correct assessment of the law ends. Pl.'s Reply at 20 (quoting *Wellness Int'l Network, Ltd. v. Sharif*, 575 U.S. 665, 685 (2015)). Plaintiff asserts that it "had no choice" but to defend itself in agency courts, but even if Plaintiff felt compelled to request a hearing in order to contest the agency's findings, it does not argue that it was prevented from raising Article III and Seventh Amendment objections during those agency proceedings. Pl.'s Reply at 19.

Rather, CS Lawn argues that it did not "consent" to adjudication before the DOL's agency judges because it was not notified of its ability to raise constitutional arguments and it did not forego an alternative forum. *See* Pl.'s Reply at 20. This misstates both the law and the facts. Consent does not

require foregoing an alternative forum. The Supreme Court's decision in *Wellness International*, which allowed implied consent to bankruptcy-court adjudication, never mentioned, let alone required, an alternative forum. *See Wellness Int'l*, 575 U.S. at 684. Quite the opposite: the Supreme Court held that implied consent "supplies the appropriate rule for adjudications by bankruptcy courts" over Chief Justice Roberts's dissent, which pointed out that "creditors lack an alternative forum to the bankruptcy court in which to pursue their claims." *Compare Wellness Int'l*, 575 U.S. at 684 *with id.* at 699–700 (Roberts, C.J., dissenting) (citation omitted). So even though no alternative forum exists in this context, that would not foreclose CS Lawn's consent to the Department of Labor's adjudication.

Plaintiff also asserts that it was never notified that it could raise Article III or Seventh Amendment arguments before the agency, and thus its implied consent should not be credited. Pl.'s Reply at 20. But that improperly shifts the burden from the litigant to the agency to raise potential arguments in support of a litigant's case. To the contrary, the entire justification for the implied consent rule is designed to prevent a litigant from doing exactly what CS Lawn has done here: "sandbagging" the court by "remaining silent about [their] objection and belatedly raising this error only if the case does not conclude in [its] favor." *Stern v. Marshall*, 564 U.S. 462, 482 (2011) (quoting *Puckett v. United States*, 556 U.S. 129, 134 (2009)); *see also Commodity Futures Trading Comm'n v. Schor*, 478 U.S. 833, 848–49 (1986). As one court explained in this context, a plaintiff "consent[s] to executive adjudication by litigating before the Administrative Law Judge and the Administrative Review Board without objection." *Frank's Nursery, LLC v. Walsh*, No. H-21-3485, 2022 WL 2757373, at *8 (S.D. Tex. July 14, 2022). If CS Lawn had concerns about the constitutionality of adjudicating immigration violations in a non-Article III forum, it had four years in which to raise those concerns. Its reply brief does nothing to excuse this failure. CS Lawn impliedly consented to non-Article III adjudication and has now—for the first time—lodged a (meritless) challenge in this Court. This belated challenge must be rejected.

## II.    This Court should reject Plaintiff's removal claims.

### A.    CS Lawn forfeited its removal claims by failing to raise them with the agency.

There is no dispute that CS Lawn did not raise its removal claims in the four years of its agency proceedings, and there is no dispute that those agency proceedings were adversarial. *Compare* Defs.' Mem. at 15-17 *with* Pl.'s Reply at 24-25. The threshold question before this Court is whether CS Lawn was required to raise its Article II removal claims in those adversarial proceedings. Defs.' Mem. at 19–21. And the answer is yes: where the statute or regulations "establish[] a mandatory exhaustion requirement," courts have "no room to excuse a party's failure to exhaust." *Fleming v. U.S. Dep't of Agric.*, 987 F.3d 1093, 1098 (D.C. Cir. 2021). "Administrative review schemes commonly require parties to give the agency an opportunity to address an issue before seeking judicial review of that question." *Carr v. Saul*, 593 U.S. 83, 88 (2021). Here, 29 C.F.R. § 503.43(a)(4) requires parties to administrative proceedings before the Department of Labor to "[s]tate the specific reason or reasons why the party believes [the agency's] determination is in error," and 29 C.F.R. § 18.80(c) imposes on the parties the burden to identify contested issues in those proceedings.

Relying almost exclusively on Appointments Clause cases, Plaintiff argues that it is not required to exhaust structural constitutional arguments before the agency. Pl.'s Reply at 25. But "[a] challenge to an appointment is meaningfully distinct from a challenge to removal protections." *NLRB v. Starbucks Corp.*, 125 F.4th 78, 87 (3d Cir. 2024). And here, "agency proceedings have already happened" and CS Lawn "could have raised its challenge before the [agency] but chose not to do so." *Id.*

Plaintiff relies on *Carr* to excuse its failure to exhaust, but in *Carr*, no statute or regulation required the petitioners to raise their challenge in administrative proceedings first. 593 U.S. at 88. Plaintiff asserts that the applicable regulation here, requiring parties to "[s]tate the specific reason or reasons why the party believes such determination is in error," 29 C.F.R. § 503.43(a)(4), does not *clearly* require exhaustion of issues. But courts have rejected similar arguments based on *Carr* and declined to find an "extraordinary circumstance" excusing a failure to exhaust. *Starbucks,* 125 F.4th at 88.

Plaintiff's argument ignores the plain text of the regulation, but even if Plaintiff's proffered reading of the regulation were correct, where a review scheme is considered "silent," courts decide "whether to require issue exhaustion based on an analogy to the rule that appellate courts will not

consider arguments not raised before trial courts" if the proceedings are sufficiently adversarial. *Carr*, 593 U.S. at 88 (citation omitted). The agency enforcement proceedings at issue here were unquestionably adversarial. As noted above, parties must initially "[s]tate the specific reason or reasons why the party believes [the agency's] determination is in error." 29 C.F.R. § 503.43(a)(4). The burden therefore falls on the parties to identify contested issues, *see* 29 C.F.R. § 18.80(c), and the ALJ "has all powers necessary to conduct fair and impartial proceedings" between the parties, *id.* § 18.12(b); *id.* § 18.20. Additionally, the procedural requirements make clear that the administrative proceeding is an adversarial adjudication driven by the parties: the regulations provide for extensive discovery procedures, motions practice, the equivalent of a bench trial (where the parties present evidence and testimony to the ALJ), and appeals. *See, e.g., id.* § 18.50, *et seq.* (discovery procedures); *id.* § 18.70, *et seq.* (motion practice); *id.* § 18.80, *et seq.* (hearing procedures); 29 C.F.R. § 503.51 (appeals to the Review Board); *see also id.* § 18.10(a) ("The Federal Rules of Civil Procedure (FRCP) apply in any situation not provided for."). At every step of this adversarial process, parties seeking review "bear the responsibility to develop issues for adjudicators' consideration," and thus issue exhaustion was required. *Carr*, 593 U.S. at 89. For all those reasons, other courts, faced with nearly identical arguments, recently and correctly held that issue exhaustion is required where the plaintiff "could have raised its challenge before the [agency] but chose not to do so. *Starbucks*, 125 F. 4th at 87; *see also Sun Valley Orchards, LLC v. U.S. Dep't of Lab.*, No. 1:21-CV-16625, 2023 WL 4784204, at \*7 (D.N.J. July 27, 2023) (holding that virtually identical ALJ regulations for adjudicating H-2A violations required issue exhaustion and, because "Sun Valley bore the responsibility to develop issues for the adjudicator's consideration and failed to raise its Appointments Clause and Removal Power objections in the agency proceedings, the claims are deemed forfeited and are hereby dismissed."). By failing to raise its "Removal Power objections in the agency proceedings," CS Lawn's claims should likewise be "deemed forfeited." *Sun Valley*, 2023 WL 4784204, at \*7.

**B.     CS Lawn has no viable removal claim because it cannot show any harm from the purported removal restrictions.**

This Court may dismiss Plaintiff's removal claims for failure to exhaust and need go no further. But those claims fail for an additional reason: because Plaintiff cannot show that the removal restrictions have caused it any harm. To have standing to challenge the removal restrictions, CS Lawn must demonstrate that "the constitutional infirmity actually caused harm." *Starbucks*, 125 F. 4th at 88; *CFPB v. Law Offs. of Crystal Moroney, P.C.*, 63 F.4th 174, 180 (2d Cir. 2023); *Bhatti v. Fed. Hous. Fin. Agency*, 97 F.4th 556, 561 (8th Cir. 2024).

Supreme Court cases have made clear that even where questions have been raised about removal authority, "there is no reason to regard any of the actions taken by the" ALJ "as void" if he was "properly *appointed*." *Collins v. Yellen*, 594 U.S. 220, 257–58 (2021). And courts applying *Collins* in similar situations have rejected speculative assertions lacking any showing of harm. *Starbucks*, 125 F. 4th at 88; *K & R Contractors, LLC v. Keene*, 86 F.4th 135, 149 (4th Cir. 2023) (noting that *Collins* instructs that "a party who has successfully challenged an unconstitutional removal restriction is not entitled to have the underlying agency action set aside absent reason to believe that the unconstitutional removal provision itself inflicted harm," and refusing to vacate a Department of Labor Review Board's decision affirming a Department of Labor ALJ's order where there was no showing of harm, "regardless of whether the removal protections for DOL ALJs are constitutional" ); *Calcutt v. FDIC*, 37 F.4th 293, 316 (6th Cir. 2022) ("*Collins* thus provides a clear instruction: To invalidate an agency action due to a removal violation, that constitutional infirmity must 'cause harm' to the challenging party."). Here, Plaintiff "identifies no particular harm suffered by virtue of [its] claim being adjudicated . . . by an ALJ who was otherwise properly appointed" and "has failed to show any connection between the unconstitutional removal clause and the ALJ's decision." *Dareth T. v. Kijakazi*, No. 2:20-cv-06913-AFM, 2022 WL 671540 (C.D. Cal. Mar. 7, 2022) (collecting cases). Nor has Plaintiff pointed to any indication that the President or the Secretary of Labor would have removed the ALJ "and appointed a new [ALJ] who would have administered this plaintiff's claims differently." *Michele T. v. Comm'r of Soc. Sec.*, 572 F.Supp.3d 1039, 1046 (W.D. Wash. 2021); *Collins*, 594 U.S. at 260; *Calcutt*, 37 F.4th at

10

316. Put simply, the Court cannot "conclude that the existence of [removal restrictions] alone tainted the ALJ's decision" and Plaintiff's removal-power claim should be rejected. *Decker Coal Co. v. Pehringer*, 8 F.4th 1123, 1137 (9th Cir. 2021).

### III. The Department of Labor's imposition of back pay is in accordance with law and fully supported by the record.

On the merits, the Labor's Department's imposition of back wages was not arbitrary or capricious.[1] Defendants previously explained how the agency "reasonably considered the relevant issues and reasonably explained the decision." *FCC v. Prometheus Radio Project*, 592 U.S. 414, 423 (2021). The ALJ's and Review Board's decisions here, spanning 55 pages, more than meet this standard. AR 6429 (ALJ Decision); AR 6664 (Review Board decision). The agency's determination should be upheld, and summary judgment entered for Defendants.

#### A.    The Department of Labor properly enforced its 2008 H-2B regulations.

CS Lawn's argument that the Department of Labor's 2008 regulations are no longer enforceable due to a permanent injunction issued in *Perez v. Perez*, has not only been squarely rejected by the *Perez* court itself, but also by multiple ALJs and the Department's Administrative Review Board. *Perez v. Perez*, No. 14-cv-682, ECF No. 14, slip op. at 7–8 (N.D. Fla. Mar. 4, 2015). In reply, Plaintiff largely ignores the *Perez* court's own admonition that the injunction "does not[] apply retroactively." *Perez v. Perez*, No. 14-cv-682, ECF No. 62 (N.D. Fla. Sept. 4, 2015); *see also Drew's Lawn & Snow Serv., Inc.*, No. 18-cv-979, ECF No. 14, slip op. at 6 & n. 8 (N.D. Fla. Feb. 11, 2019) (confirming that the *Perez* injunction "does not apply retroactively to prevent DOL from enforcing the conditions of labor certifications issued under the 2008 H-2B regulations" prior to the injunction's effective date of April 30, 2015). Moreover, Plaintiff offers no response to the multiple ALJ and Review Board decisions recognizing that the Department of Labor can enforce its 2008 H-2B regulations for pre-April 2015 labor certifications. Pl.'s Reply at 29-31; *See Adm'r, Wage and Hour Div. v. Deggeller Attractions, Inc.*, ARB No. 2020-0004, slip op. at 4-5 (ARB Jan. 25, 2022) (noting that the *Perez* court's clarification held that

---

[1] Plaintiff does not challenge the Review Board's decision ordering CS Lawn to pay $16,000 in civil money penalties for its violations of the H-2B program under the APA. So, CS Lawn has waived any such challenge. *See Wood v. Milyard*, 566 U.S. 463, 474 (2012).

the 2008 regulations were still enforceable and thus apply to labor certifications issued before April 30, 2015); *Adm'r, Wage & Hour Div. v. Strates Shows, Inc.*, ARB No. 15-069, Amended Final Decision & Order, slip op. at 2–3 (ARB Aug. 16, 2017) (reconsidering decision characterizing 2008 H-2B Rule as unenforceable and holding the Department can enforce the 2008 H-2B regulations for pre-April 2015 labor certifications.[2] Plaintiff conflates the holding of the *Perez* court invalidating the 2008 rule with the separate question of whether the 2008 rule is enforceable for labor certifications issued prior to the April 30, 2015 effective date of *Perez* injunction. But the *Perez* court made clear that its injunction did not apply retroactively, and the subsequent opinion in *Drews's Lawn* held that *Perez* does not preclude enforcement of labor certifications that were issued while the rule was still in effect. *Drew's Lawn & Snow Serv., Inc.*, No. 18-cv-979, ECF No. 14 (N.D. Fla. Feb. 11, 2019). And although Plaintiff tries to narrowly distinguish the factual circumstances of the *Drew's Lawn* case, it cannot overcome the clear holding of that case: "the permanent injunction in *Perez* does not apply retroactively to prevent [Department of Labor] from enforcing the conditions of labor certifications issued under the 2008 Regulations prior to the entry of the injunction." *Id.* at 6.

**B.     The Department of Labor is fully authorized to assess back wages.**

Retreating to its backup argument, CS Lawn also contends that the agency's award of $38,000 in back wages should be vacated "because DOL lacked statutory authority to issue such a remedy." Pl.'s Reply. at 31. CS Lawn continues to press its Hail Mary argument that the Secretary's authority to "impose such administrative remedies (including civil monetary penalties in an amount not to exceed $10,000 per violation) as the Secretary determines to be appropriate" under the H-2B program, somehow precludes imposing back wages. 8 U.S.C. 1184(c)(14)(A)(i). Analyzing the plain statutory text and supporting case law, Defendants explained that nothing in this statutory provision forecloses retrospective relief like back wages. *Id*; Defs.' Mot. Summ. J. at 23-24, ECF No. 18 (explaining that

---

[2] Despite the weight of authority supporting the Department's ability to enforce the 2008 Rule for labor certifications issued prior to April 30, 2015, even if, as the Plaintiff argues, the Department could not enforce such regulations because it lacked authority to promulgate them, *see* Pl.'s Reply at 30, the Department would still retain authority, as delegated by the Department of Homeland Security, to enforce the terms and conditions of employment related to the H-2B petition. *See* 8 U.S.C. § 1184(c)(14)(A)–(B); *see also Drew's Lawn*, ECF No. 14, slip op. at 3 n.7.

"[a]nyone fluent in the English language knows that the word 'includes' cannot be assumed to mean 'includes only.'" (quoting *Wnuck v. Comm'r*, 136 T.C. 498, 506 (2011))); *see also Apple Inc. v. Voip-Pal.com, Inc.*, 976 F.3d 1316, 1323 (Fed. Cir. 2020) (collecting cases). Although Plaintiff resorts to asking rhetorical questions about when an award of back pay constitutes a windfall, no such concern is present here. Pl.'s Reply at 31. The Secretary was authorized to impose back pay and Plaintiff's claims must be rejected.

### C.    The Department of Labor's imposition of back pay is fully supported by the record and is neither arbitrary nor capricious.

Plaintiff largely abandons its arguments that the imposition of back pay based on improper deductions for housing and uniforms was unsupported by the record. *See* Pl.'s Reply at 29-30. To the extent that claim has not been abandoned, the record amply supports the imposition of back pay. The agency "reasonably considered the relevant issues and reasonably explained the decision." *Prometheus Radio*, 592 U.S. at 423. The Review Board therefore correctly concluded that "the housing was not 'customarily furnished' pursuant to Section 531.31 of the FLSA," and CS Lawn "in turn violated Section 655.22(g)(1)" by deducting rent for such housing. AR 6676. Moreover, the ALJ properly concluded, and the Review Board correctly affirmed, that Plaintiff violated the deduction-disclosure requirement and owed each of the 21 H-2B workers in the 2015 season $99.20—the difference between the disclosed deduction and the charged deduction—for a total of $2,083.20. AR 6464, 6675, 6677–78. The decision was thoroughly reasoned and supported by the record and Plaintiff's claims should be rejected.

## IV.    The Department of Labor did not violate the Excessive Fines Clause.

If this Court concludes that the agency's award of penalties was reasonable and survives APA review, there is no need to reach Plaintiff's Excessive Fines Clause claim, because that claim necessarily fails. *See Pharaon v. Bd. of Governors of Fed. Rsrv. Sys.*, 135 F.3d 148, 157 (D.C. Cir. 1998) (explaining that rejection of Eighth Amendment claim follows from rejection of Plaintiff's APA claim).

The penalties imposed on Plaintiff do not qualify as a "fine" within the meaning of the Excessive Fines Clause, and the Supreme Court has only found certain civil penalties and forfeitures

to be "punishment" within the meaning of the Clause in limited circumstances—unlike those present here—where the penalty or forfeiture was either a post-conviction sanction or was assessed against property used in the commission of a crime for which the owner had already been convicted. *United States v. Bajakajian*, 524 U.S. 321, 325. 328 (1998); *Browning-Ferris Indus. of Vt., Inc. v. Kelco Disposal, Inc.*, 492 U.S. 257, 265 (1989). But even if the Excessive Fines Clause applied to a corporation like Plaintiff, (which, as explained in the Government's opening brief, it does not, *see* Defs.' Mem. at 28), and even if it applied to civil penalties like the ones at issue here, the penalties are far from "excessive" by any stretch of the imagination. Plaintiff challenges, at most, the $16,000 in total penalties that it was ordered to pay (not $43,500, as it suggests in its brief) or the $7,500 that was imposed for the improper housing deductions in violation of federal immigration law (not, as Plaintiff repeatedly asserts, "harmless alleged violation[s] of local zoning laws"). Pl.'s Reply at 26-27.

Most importantly, Plaintiff offers absolutely no response to the multiple examples of courts rejecting Excessive Fines Clause claims to uphold far higher penalties for similar violations, Pl.'s Reply at 27-29, including claims involving hundreds of thousands of dollars. Plaintiff offers no explanation for why a mere $7,500 fine for improper housing deductions in violation of federal law would violate the Excessive Fines Clause while those other fines, totaling, in the case of *Sun Valley* for example, over $200,000, did not. And these penalties are "nothing out of the ordinary." *Sun Valley*, 2023 WL 4784204, at *11. According to Plaintiff itself, "[f]rom 2011 through April 2023, for alleged violations of the H-2B program, DOL has imposed more than $200,000 in civil monetary penalties against an employer on two occasions; between $100,000 and $200,000 on 14 occasions; between $10,000 and $100,000 on 365 occasions; and under $10,000 on 279 occasions." Compl. ¶ 40. And here, as in *Sun Valley*, the agency imposed far less than the maximum penalty. *Sun Valley*, 2023 WL 4784204, at *11. Plaintiff's excessive-fines claim should be rejected and judgment should be entered for Defendants.

## CONCLUSION

For the reasons explained above, Plaintiff's summary-judgment motion should be denied and Defendants' summary-judgment motion should be granted.

DATED: March 13, 2025                    Respectfully submitted,

                                         YAAKOV M. ROTH
                                         Acting Assistant Attorney General

                                         JULIE STRAUS HARRIS
                                         Assistant Director, Federal Programs Branch

                                         /s/ Anna L. Deffebach
                                         ANNA L. DEFFEBACH
                                         Trial Attorney
                                         U.S. Department of Justice
                                         Civil Division, Federal Programs Branch
                                         1100 L St NW
                                         Washington, DC 20005
                                         Tel: (202) 305-8356
                                         Email: anna.l.deffebach@usdoj.gov

                                         *Attorneys for Defendants*